UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID C. HINDAL,

                              Petitioner,

        v.

MIKE OBENLAND,

                              Respondent.

CASE NO. C15-0525-JLR-MAT

REPORT AND RECOMMENDATION

## INTRODUCTION

Petitioner David C. Hindal proceeds with counsel in this habeas corpus matter pursuant to 28 U.S.C. § 2254.  He is in custody pursuant to a 2013 conviction by jury verdict of residential burglary.  (Dkt. 24, Ex. 1.)

Petitioner raises four grounds for relief in his habeas petition.  (Dkt. 16.)  Respondent submitted an answer to the petition, along with relevant portions of the state court record.  (Dkts. 21 & 24.)  The Court has now considered the record relevant to the grounds raised in the petition. For the reasons discussed herein, it is recommended that petitioner's habeas petition be DENIED and this case DISMISSED.

## BACKGROUND

As accurately summarized by respondent, the trial transcripts reflect the following:

REPORT AND RECOMMENDATION
PAGE - 1

1

2          In the evening of April 9, 2012, Mrs. Mendoza called 911
   after her dog began barking and her husband heard noises,
   including a window breaking, at their neighbor's house.  Deputy
3  Sheriffs responded to the 911 call, arriving within a few minutes.
   Deputy Rayborn went to the rear of the house and saw that the
4  slider was broken.  While Deputy Rayborn was watching the rear
   of the house, a man tried to exit the house through the broken
5  slider, but as soon as Deputy Rayborn turned on his flashlight, the
   man went back inside.

6          The deputies entered the house through the broken slider,
   and they saw that there was a large rock on the floor just inside.
7  Deputy Rayborn unlocked the front door of the house, and
   additional deputies came in and began searching the house for
8  suspects.  The deputies quickly located Hindal, who was hiding in
   a closet next to the front door.  In the closet with Hindal were bags
9  containing electronic equipment and packs of "Magic:  The
   Gathering" game cards.  These items belonged to the homeowner,
10 Orlando Montoya, who did not keep them in the closet where the
   deputies found Hindal.  The deputies also located a backpack
11 containing items with Hindal's name on them in the back yard.
   Mr. Montoya was out of town at the time of the burglary.  Mr.
12 Montoya did not know Hindal, and had not given Hindal
   permission to enter his home.

13         Hindal testified at trial that on the day of the burglary, he
14 went to his fiancée's apartment after attending a court-ordered
   alcohol treatment program.  Hindal said that he left the apartment
15 at around 6:00 p.m. to buy diapers and formula for their daughter.
   Hindal claimed that he got on a bus to go to the store, and while on
16 the bus asked some people if he could bum a cigarette.  Hindal
   testified that these individuals told him they had cigarettes
17 "stashed" some distance away, so Hindal got off the bus with
   them.  Hindal claimed that he followed the people for about a mile
18 before giving up.  Hindal claimed that he began falling asleep and
   thinking the house was abandoned, decided to take a "power nap"
19 in the house.  Hindal admitted that he broke into the house, but
   claimed that he was disoriented.  Hindal claimed he hid in the
20 closet because he was afraid of being bitten by the K-9 dog.
   Claiming he did not intend to steal anything from the house,
21 Hindal contended he was only guilty of criminal trespass.

22 (Dkt. 21 at 2-3; internal citations to trial transcript omitted; *see also* Dkt. 24, Exs. 11-13.)

23         Petitioner was convicted of residential burglary and sentenced to sixty-three months

REPORT AND RECOMMENDATION
PAGE - 2

1   confinement.  (Dkt. 24, Ex. 1.)  He filed an appeal, alleging abuse of discretion through denial of

2   a motion for a mistrial after the jury saw him wearing ankle shackles, error in the calculation of

3   his offender score, and several additional grounds for review raised pro se.  (*Id.*, Exs. 3, 5.)  The

4   state conceded remand was necessary for resentencing, but objected to petitioner's remaining

5   grounds for relief.  (*Id.*, Ex. 4.)   The state court, on September 15, 2014, remanded for

6   resentencing based on the error in calculating the offender score and otherwise affirmed the

7   conviction.  (*Id.*, Ex. 2.)

8          Petitioner filed a motion for discretionary review, alleging error:  (1) in the suppression

9   of evidence of an "excited utterance," "mostly due to the incompetence" of his defense counsel;

10  (2) due to the failure of an eyewitness to take the stand at trial; (3) in the denial of his request for

11  his counsel to withdraw and to allow him to proceed pro se; and (4) in the denial of a mistrial

12  after the jury viewed him in restraints.  (*Id.*, Ex. 6.)  The Washington Supreme Court, on March

13  4, 2015, denied the petition for review.  (*Id.*, Ex. 7.)  The Washington Court of Appeals issued its

14  mandate on April 15, 2015 (*id.*, Ex. 8), and petitioner filed his habeas petition in this Court that

15  same month (*see* Dkt. 1).

16                                   <u>DISCUSSION</u>

17         Petitioner here raises four grounds for relief:

18         1.      Denial of due process through "excited utterance"
                   testimony the jury should have heard.
19

20         2.      Denial of ability to call a witness in his defense.

21         3.      Denial of request for attorney withdrawal and self-
                   representation.
22         4.      Wearing the "Oregon Boot" may have caused undue bias.

23  (Dkt. 16 at 5-10.)

REPORT AND RECOMMENDATION
PAGE - 3

1  The parties aver and the Court agrees that petitioner exhausted his state remedies by

2  fairly presenting his claims to the Washington Supreme Court as federal claims.  The Court, as

3  such, proceeds to consideration of petitioner's claims on the merits.

4  A.    Merits Review

5  Federal habeas corpus relief is available only to a person "in custody in violation of the

6  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Pursuant to the Anti-

7  Terrorism and Effective Death Penalty Act (AEDPA), a habeas corpus petition may be granted

8  with respect to any claim adjudicated on the merits in state court only if the state court's decision

9  was contrary to or involved an unreasonable application of clearly established federal law, as

10  determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  In addition, a habeas

11  corpus petition may be granted if the state court decision was based on an unreasonable

12  determination of the facts in light of the evidence presented in the state court proceeding.   §

13  2254(d)(2).

14  Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the writ

15  only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

16  question of law, or if the state court decides a case differently than the Supreme Court has on a

17  set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

18  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if

19  the state court identifies the correct governing legal principle from the Supreme Court's

20  decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id*. at 412-

21  13.  The Supreme Court has made clear that a state court's decision may be overturned only if

22  the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

23  In considering a habeas petition, this Court's review "is limited to the record that was

REPORT AND RECOMMENDATION
PAGE - 4

before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398-1400, 1415 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

  1. <u>Ground One</u>:

  In his first ground for relief, petitioner challenges the failure to allow an out-of-court statement as an "excited utterance" exception to the hearsay rule. Petitioner told a police officer after his arrest: "I broke into the house because the voices in my head told me to." (Dkt. 24, Ex. 12 at 6.) After the trial judge denied a request to admit only the first part of the statement given the "rule of completeness," the prosecutor declined to offer the statement for admission. (*Id.* at 6-13.) When defense counsel thereafter sought to admit the statement in full, the prosecutor objected on hearsay grounds, while defense counsel argued it was offered to show petitioner's state of mind, not to prove the truth of the matter asserted. (*Id.* at 13-16.) The judge excluded the statement upon concluding it did not show petitioner's state of mind when he made the statement and was, instead, an explanation of his earlier actions. (*Id.* at 16-17.) Petitioner did not contend the statement was an excited utterance or present any associated offer of proof. (*See id.* at 6-17.)

  The Washington Court of Appeals summarily rejected this claim, finding no basis for further review. (*Id.*, Ex. 2 at 4-5.) Nor does the claim succeed in this Court. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the

REPORT AND RECOMMENDATION
PAGE - 5

United States." § 2254(a).  Thus, state court procedural and evidentiary rulings are not subject to federal habeas review unless such rulings "violate[] federal law, either by infringing upon a specific constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (cited sources omitted).  Petitioner does not here set forth a basis for habeas relief based on an alleged error in relation to the state court rules of evidence.  *See generally Estelle*, 502 U.S. at 67 (federal habeas relief is not available for errors of state law), and *Swan v. Peterson*, 6 F.3d 1373, 1382 (9th Cir. 1993) ("[A] federal habeas court may not prescribe evidentiary rules for the states.")

Respondent further argues that petitioner's first ground for relief does not show a violation of petitioner's right to present a defense.  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (internal citations omitted).  The right to present a defense is not absolute. *Montana v. Egelhoff*, 518 U.S. 37, 41-42 (1996).  "[T]he accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).  Accordingly, "'[t]he accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Egelhoff*, 518 U.S. at 42 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

The Constitution affords state courts broad latitude in regard to the exclusion of evidence from criminal trials.  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  To support a

REPORT AND RECOMMENDATION
PAGE - 6

constitutional violation, a state court's decision to exclude evidence "must be so prejudicial as to jeopardize the defendant's due process rights."  *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990).

As reflected above, the statement at issue was found inadmissible under the state rules of evidence to show petitioner's state of mind, and petitioner did not argue or otherwise show that the excited utterance exception to the hearsay rules applied.  *See State v. Hardy*, 133 Wn.2d 701, 714, 946 P.2d 1175 (1997) ("Excited utterances are spontaneous statements made while under the influence of external physical shock before the declarant has time to calm down enough to make a calculated statement based on self-interest.") (cited sources omitted), and *State v. Thomas*, 150 Wn.2d 821, 853-54, 83 P.3d 970 (2004) (with an excited utterance, the crucial question is "whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.") (quoting *Johnston v. Ohls*, 76 Wn.2d 398, 406, 457 P.2d 194 (1969)).  Because the statement was found inadmissible, its exclusion did not violate petitioner's right to present a defense.

Petitioner, in sum, fails to show the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  His first ground for relief should be denied.

2.     Ground Two:

In his second ground for relief, petitioner contends he was denied the right to call Jose Mendoza as a witness in his defense.  He describes his "main reason" for wanting to call Mr. Mendoza as follows:  "[H]is written statement had similar hand-writing as the officer who took it.  I believe the officer wrote it."  (Dkt. 16 at 7.)  Petitioner also states that, after his attorney

REPORT AND RECOMMENDATION
PAGE - 7

would not allow him to call Mr. Mendoza as a witness, he tried, but failed to secure the right to represent himself.

The state court summarily denied this claim, noting only that "Mendoza is the man who called 9-1-1 when he saw two men he could not identify in his neighbor's yard." (Dkt. 24, Ex. 2 at 4-5.) Again, petitioner fails to demonstrate the state court's conclusion was an unreasonable application of clearly established federal law.

The constitutional right to present a defense extends to the right to present evidence, including witness testimony. *Washington v. Texas*, 388 U.S. 14, 18-19 (1967). Indeed, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers*, 410 U.S. at 302 (cited cases omitted). A criminal defendant has a constitutional right "to present relevant and material witnesses in his defense[,]" and the state may infringe on that right "only when [the] limitation has a nonarbitrary purpose(s) that is (are) proportionate to the corresponding infringement upon the defendant." *Moses v. Payne*, 555 F.3d 742, 766 (2009) (citing *Chambers*, 410 U.S. at 295). *See also DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001) ("The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense.") (cited sources omitted).

The record reflects that, after the first defense witness testified, petitioner requested self-representation and told the judge he "really need[ed] to be able to speak to Mr. Mendoza and the Court has not given me an opportunity to." (Dkt. 24, Ex. 13 at 71-72.) He further stated:

> I should – I should have the right to question my accusers. If somebody calls 911, it was the witness for me. I mean, they witnessed me going into the house. This is the person that said that they saw me go in the house, and also told three different officers in three different reports, . . . that he saw two people, according to

REPORT AND RECOMMENDATION
PAGE - 8

three different officers.  We can't have him here?  This is kind of –
I think this is just absurd.

(*Id*. at 72-73.)  After the judge denied the request for self-representation, petitioner testified in his

own defense and the defense rested.  (*Id*. at 74-106.)  Defense counsel did not call Mr. Mendoza

as a witness and the judge did not exclude any testimony from Mr. Mendoza.  Petitioner does

not, under these circumstances, demonstrate he was denied the right to present a witness in his

defense.

Petitioner did not clearly allege in his habeas petition ineffective assistance of counsel

due to the failure to call Mr. Mendoza as a witness.  (*See* Dkt. 16 at 7.)  He did, however, argue

"ineffective counsel" in relation to this claim before the state court.  (Dkt. 24, Ex. 5 at 4.)  In any

event, even assuming petitioner has alleged and exhausted this claim, he also fails to demonstrate

his entitlement to habeas relief based on ineffective assistance of counsel.

The Sixth Amendment of the United States Constitution guarantees a criminal defendant

the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Courts evaluate claims of ineffective assistance of counsel under the two-prong test set forth in

*Strickland*.  Under that test, a defendant must prove that (1) counsel's performance fell below an

objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's

error, the result of the proceedings would have been different.  *Id*. at 687-94.

When considering the first prong of the *Strickland* test, judicial scrutiny must be highly

deferential.  *Id*. at 689.  There is a strong presumption that counsel's performance fell within the

wide range of reasonably effective assistance.  *Id*.  The Ninth Circuit Court of Appeals has made

clear that "'[a] fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

REPORT AND RECOMMENDATION
PAGE - 9

1   challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"

2   *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

3   The second prong of the *Strickland* test requires a showing of actual prejudice related to

4   counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a

5   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6   would have been different.  A reasonable probability is a probability sufficient to undermine

7   confidence in the outcome." *Strickland*, 466 U.S. at 694.

8   The reviewing court need not address both components of the inquiry if an insufficient

9   showing is made on one component.  *Id.* at 697.  Furthermore, if both components are to be

10  considered, there is no prescribed order in which to address them.  *Id.*[1]

11  Strategic trial decisions, such as whether to call a witness at trial, "rest[] upon the sound

12  professional judgment of the trial lawyer."  *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir.

13  1980).  *See also Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation

14  of law and facts relevant to plausible options are virtually unchallengeable.")  As recognized by

15  the Ninth Circuit, "[f]ew decisions a lawyer makes draw so heavily on professional judgment as

16  whether or not to proffer a witness at trial."  *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999).

17  An attorney may decline to call particular witnesses for a variety of tactical reasons.  *See, e.g.*,

18  *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000) (witness would have provided little benefit at

---

[1] Where a state court rejected an ineffectiveness claim on the merits the "pivotal question" in a § 2254 proceeding "is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct 770, 785 (2011) (citations omitted).  The Court employs a "'doubly deferential'" review, taking a "'highly deferential' look at counsel's performance [pursuant to *Strickland*, and] through the 'deferential lens of 2254(d).'"  *Pinholster*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2 and 123 (2009), and *Strickland*, 446 U.S. at 689).  A petitioner, therefore, "must demonstrate that it was necessarily unreasonable" for the state court to rule as it did.  *Id.*  In this case, it is not entirely clear whether the state court considered this claim as alleging ineffective assistance of counsel.  (*See* Dkt. 24, Ex. 2 at 4-5.)

REPORT AND RECOMMENDATION
PAGE - 10

1    great risk, as well as duplicative testimony); *Wilson v. Henry*, 185 F.3d 986, 989 (9th Cir. 1999)

2    (testimony largely at variance with evidence); *Denham v. Deeds*, 954 F.2d 1501, 1505-06 (9th Cir.

3    1992) (inconsistencies in witness testimony).

4            Petitioner here takes issue with his attorney's failure to call Mr. Mendoza as a witness, but

5    does not explain the significance of the evidence this witness would have provided.  *Dows v.*

6    *Wood*, 211 F.3d 480, 486 (9th Cir. 2000) ("Moreover, Dows provides no evidence that this

7    witness would have provided helpful testimony for the defense - i.e., Dows has not presented an

8    affidavit from this alleged witness.")   To the extent petitioner focuses on the fact that Mr.

9    Mendoza suggested the existence of more than one intruder, testimony on this point would have

10   been duplicative of other testimony offered at trial.  (*See*, *e.g.*, Dkt. 24, Ex. 12 at 41, 66 and Ex. 13

11   at 24-27.)   Also, petitioner no more than speculates that an officer wrote out Mr. Mendoza's

12   statement and does not otherwise explain how, but for his counsel's failure to secure testimony on

13   that issue, the result of the proceeding would have been different.  Without an indication as to

14   what Mr. Mendoza would have testified to and how that testimony might have changed the

15   outcome of the case, petitioner fails to demonstrate prejudice.  *See*, *e.g.*, *United States v. Berry*,

16   814 F.2d 1406, 1409 (9th Cir. 1989).  A bare and conclusory allegation does not suffice to support

17   this claim.  *See generally James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (habeas relief not

18   warranted based on conclusory allegations).  For this reason, and for the reasons stated above,

19   petitioner's second ground for relief lacks merit.

20           3.    <u>Ground Three:</u>

21           In his third ground for relief, petitioner alleges violation of his right to self-representation

22   through the denial of his request for his attorney to withdraw and to proceed without an attorney.

23   Referring to the statement he maintains constituted an excited utterance, petitioner avers his

REPORT AND RECOMMENDATION
PAGE - 11

attorney's incompetence in that she had not been aware of the statement until after trial commenced.  In seeking self-representation, petitioner had pointed to both his inability to speak to Mr. Mendoza and the fact that the court did not admit his statement that he broke into the house after hearing voices in his head.  (Dkt. 24, Ex. 13 at 72 (". . . I am going to mention that we had an officer yesterday say that I was hearing voices, and you held that back, Your Honor.  You kept that because my attorney's investigator didn't bring it up to the State.  This is kind of a lack of representation from my part."))

The trial judge denied petitioner's request for his attorney's withdrawal and self-representation as untimely.  (*Id*. at 71-73.)  The Washington Court of Appeals also summarily denied the claim.  (*Id*., Ex. 2 at 4-5.)  Petitioner fails to demonstrate the state court's consideration of this claim was unreasonable.

The Sixth Amendment affords a criminal defendant the right to self-representation.  *Faretta v. California*, 422 U.S. 806, 817-21 (1975).  The assertion of the right to self-representation "must be knowing and intelligent, timely and not for the purpose of delay, and unequivocal." *Adams v. Carroll*, 875 F.2d 1441, 1442 (9th Cir. 1989) (citations omitted).  The Supreme Court has not directly addressed the timing of a request for self-representation.  *Marshall v. Taylor*, 395 F.3d 1058, 1060-61 (9th Cir. 2005).  The Court did, however, "indirectly incorporate[] a timing element[]" in finding a violation of the Sixth Amendment right to self-representation where a request was made "'weeks before trial.'"  *Id*. (quoting *Faretta*, 422 U.S. at 835).  As stated by the Ninth Circuit Court of Appeals:  "Because the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely." *Id*. at 1061 (finding denial of *Faretta* request made on the morning of trial clearly

comported with Supreme Court precedent).

In this case, petitioner made his request for self-representation after the prosecution had rested its case and after petitioner's first witness testified. (Dkt. 24, Ex. 13 at 52-71.) Only one other witness – petitioner – gave testimony after the judge denied the request for self-representation. (*Id*. at 74-106.) The trial court's denial of the request as untimely did not violate petitioner's Sixth Amendment rights, and the Court of Appeals' rejection of this claim does not constitute an unreasonable application of clearly established federal law.

In raising this claim, petitioner points to the fact that his attorney was not aware, until after trial commenced, that Deputy Michael Rayborn told a defense investigator petitioner stated he "broke into the house because the voices in [his] head told [him] to." (Dkt. 24, Ex. 12 at 4-7.) He maintains this shows an "egregious lack of competence on behalf of my attorney." (Dkt. 16 at 8.) Again, although it not clear whether petitioner alleged and exhausted a claim of ineffective assistance associated with his third ground for relief (*see* Dkt. 16 at 8 and Dkt. 24, Ex. 5 at 1, 3), he fails to demonstrate any basis for habeas relief in relation to such a claim.

The record shows Deputy Rayborn had not included the statement at issue in his police report, and defense counsel explained she was not previously aware of the statement, had been under the impression either she or the prosecutor had been present for any interviews conducted, and that the interview in which the statement was noted occurred only two weeks prior to the start of trial. (Dkt. 24, Ex. 12 at 4-9.) She added: "This is a very, very old case. There's been no other independent indication that any statement was ever made nor has the State ever sought to introduce any statements that Mr. Hindal made." (*Id*. at 9.)

In attempting to admit only the first part of the statement, reflecting petitioner's admission he broke into the house, the prosecutor argued the admission of the latter half of the

REPORT AND RECOMMENDATION
PAGE - 13

statement would be "some sort of backdoor attempt at a diminished capacity defense." (*Id.*)  He observed that, after many months of evaluations, "that mental health defense was stricken[]" and there was "nobody that will testify that he was not in his right mind." (*Id.*)  As described above, the prosecutor subsequently dropped his request to admit the statement and defense counsel tried, but failed in her attempt to admit the statement.  (*Id*. at 10-17.)

Petitioner shows his counsel was not aware as to the content of an interview conducted by her own investigator for some two weeks after the interview occurred.  However, considering the facts surrounding that interview, his counsel's performance in relation to the issue at trial, and the record in this case as a whole, petitioner fails to show his counsel's performance fell below an objective standard of reasonableness or resulted in actual prejudice.  For this reason, and for the reason stated above, petitioner is not entitled to habeas relief in relation to his third ground for relief.

4.    Ground Four:

Petitioner's fourth ground for relief alleges his constitutional rights were violated when the jury viewed him wearing restraints in the courtroom.  As discussed below, petitioner appeared before the jury wearing leg shackles or restraints after an "Oregon boot" he was made to wear became too uncomfortable.[2]

A criminal defendant has a constitutional right to appear before a jury free of visible restraints.  *Deck v. Missouri*, 544 U.S. 622, 626-29 (2005).  "Visible shackling of a criminal defendant during trial 'undermines the presumption of innocence and the related fairness of the factfinding  process' and "'affront[s]' the 'dignity and decorum of judicial proceedings that the

---

[2] Neither the parties to this case, nor the state court record provides any description of the Oregon boot.

REPORT AND RECOMMENDATION
PAGE - 14

judge is seeking to uphold.'" *Larson v. Palmateer*, 515 F.3d 1057, 1062 (9th Cir. 2008) (quoting *Deck*, 544 U.S. at 630-31 (alteration in original) (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970))).  As such, the use of visible restraints is prohibited "absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629.  In exercising its discretion, the trial court may consider potential security problems and the risk of escape, *id.*, as well as the likelihood of disruption in the courtroom, *Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004) (citing *Allen*, 397 U.S. at 343).

Even if unjustifiably restrained, a habeas petitioner is only entitled to relief where the error had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Hedlund v. Ryan*, 750 F.3d 793, 801 n.6 (9th Cir. 2014) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks omitted)).  *Accord Larson*, 515 F.3d at 1064. Courts have found an absence of prejudice where the jury did not see the restraints, and have further determined that "a jury's brief or inadvertent glimpse" of a defendant in restraints does not warrant habeas relief in the absence of a showing of prejudice.  *Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004) (citing, *inter alia*, *United States v. Olano*, 62 F.3d 1180, 1190 (9th Cir. 1995) ("a jury's brief or inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively prejudicial to a defendant"); *Castillo v. Stainer*, 983 F.2d 145, 148 (9th Cir. 1992), *amended by* 997 F.2d 669 (9th Cir. 1993) (waist chain that could not be seen by the jury was harmless error; also no prejudice when, during transport to and from the courtroom, some members of the jury pool saw defendant in shackles in court corridor); *Wilson v. McCarthy*, 770 F.2d 1482, 1485-86 (9th Cir. 1985) (the jury's brief viewing of defendant's shackles as he left the witness stand at the conclusion of his testimony was not prejudicial)).  In

considering prejudice, courts in the Ninth Circuit have considered the appearance and visibility

of the restraints, the nature of the crime, the strength of the state's case, and the amount of time

the prisoner was restrained.  *Larson*, 515 F.3d at 1064 (finding no prejudice where defendant was

"wearing the leg brace for the first two days of his six-day trial").

        The Washington Court of Appeals summarized the facts relevant to petitioner's fourth

ground for relief as follows:

> . . . Hindal was tried to a jury from May 7, 2013, to May
> 10, 2013.
>
> On May 6, 2013, Hindal did not object when jail personnel
> explained that it was their practice to bring criminal defendants to
> the courtroom in handcuffs and an "Oregon boot" and remove the
> handcuffs before the jury arrives.
>
> On May 8, 2013, Hindal asked to be placed in ankle chains
> because the Oregon boot was causing him considerable discomfort.
> It is undisputed that the next day, he was wearing ankle shackles.
>
> On May 9, 2013, Hindal testified in the defense case.
> Defense counsel became aware that Hindal's shackles were visible
> to the jury and moved for a mistrial.
>
> The court denied the motion:
>
> The record reflects that on the first day the trial was
> to start, or maybe it was the second day, before we
> brought the jury in, that Mr. Hindal refused to dress
> in civilian clothing, in fact at one point he came
> down in a smock and then later in jail clothes.  The
> Court indicated to Mr. Hindal that it would be his
> choice as to whether to dress in civilian clothes, but
> it was in his interest to dress in civilian clothes
> when the jury was present, and the Court made
> special note of the fact that Mr. Hindal was dressed
> in jail sandals when he came down.  He did
> thereafter dress in civilian clothes, except that he
> has apparently chosen to continue to wear jail
> sandals, so if the jury's been able to see his ankle
> bracelet, that would be a reason why.  He's also

REPORT AND RECOMMENDATION
PAGE - 16

1
2
3
4
5
6

made outbursts, despite the Court warning him that this would be unfavorably – could be unfavorably received by the jury for him to make outbursts in court.   He has made outbursts in court in the presence of at least one juror, and I think the entire jury, that he is in custody, that he's been in custody. So if they have seen the ankle bracelet, they haven't seen anything that – other than what Mr. Hindal has chosen voluntarily to provide them by way of information.   The Court denies the motion for mistrial.

7
(Dkt. 24, Ex. 2 at 1-2 (quoting Ex. 13 at 52).)

8
The Court of Appeals rejected petitioner's claim:

9
10

The claimed irregularity is that the jurors were able to see that Hindal was wearing ankle shackles.  Hindal did not request a curative instruction.  He argues that the irregularity was so serious that an instruction could not have cured the prejudice.

11
12
13
14
15
16

Shackling undermines the presumption of innocence. Shackles indicate to a jury that the defendant is dangerous.  *See State v. Finch*, 137 Wn.2d 792, 844-46, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999).   An unjustified decision to shackle a defendant is presumptively prejudicial.  *State v. Clark*, 143 Wn.2d 731, 774, 24 P.3d 1006, *cert. denied*, 534 U.S. 1000 (2001). However, Hindal does not assign error to the court's initial decision that it would be appropriate to have him wear an Oregon boot in the courtroom.  Thus, the serious threshold question of whether it was appropriate to restrain Hindal's freedom of movement is not before us.

17
18
19
20
21
22

The mere fact that a jury sees an inmate wearing shackles does not mandate reversal.  *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002).  If the shackles were visible, their effect was cumulative of the effect of Hindal's appearance in jail garb, which revealed that he was in custody.   While shackles communicate dangerousness more strongly, the decision to wear shackles – like the decision to wear jail garb – was Hindal's.  He does not explain why he should be allowed to second-guess that decision.  *See Rodriguez*, 146 Wn.2d at 271.   Hindal has not demonstrated that the trial court abused its discretion by denying the motion for a mistrial.

23

REPORT AND RECOMMENDATION
PAGE - 17

> Even assuming the decision to allow Hindal to appear in shackles was unjustified, a claim of unconstitutional shackling is subject to harmless error analysis. *Clark*, 143 Wn.2d at 775. Any error here was harmless. The evidence that Hindal committed residential burglary was so overwhelming that no rational conclusion other than guilt could be reached. *See Clark*, 143 Wn.2d at 776-77.

(*Id*., Ex. 2 at 3-4.)  As argued by respondent, petitioner fails to show the state court adjudication of this claim was an unreasonable application of clearly established federal law.

The record shows petitioner was originally transported to the courtroom in shackles because he was a "two-officer escort" due to his jail housing location and because the courtroom floor had a street-level exit. (*Id*., Ex. 10 at 7-8, 11-12.)  The trial judge, correctional officer escort, prosecutor, and defense counsel all agreed that, once petitioner changed into civilian clothing, he would be brought to the courtroom in handcuffs and an "Oregon boot," and the shackles would be removed before the jury entered the courtroom.  The record additionally shows numerous instances in which petitioner was verbally disruptive in court (*id*., Ex. 12 at 75-80, 84, 88-89, 119), and that, on the second day of trial, he twice requested the boot be removed and replaced with ankle chains (*id*. at 88 (petitioner: "I'm not going to hide it from the jury.  I mean put me in ankle chains, I don't care!"; counsel: "Mr. Hindal's indicating some considerable discomfort in the Oregon boot and has made a motion to have the ankle chains put on and I indicated to him I would address that with the Court. . . ") and 119 ( "Can you please get this thing off my leg and put the shackles back on?  I've been uncomfortable the whole time. . . ."))

Rather than ordering that petitioner be placed in shackles, the trial judge stated at the outset of the trial that she wanted the shackles removed.  (*Id*., Ex. 10 at 7-8.)  There is no allegation the jury saw petitioner wearing the Oregon boot.  Nor is there any dispute as to the fact that neither petitioner, nor his counsel objected to the use of the boot at the outset of trial (*id*.

REPORT AND RECOMMENDATION
PAGE - 18

at 11-13), the fact that petitioner unambiguously requested the boot be replaced with ankle chains or shackles (*id.*, Ex. 12 at 88, 119), and that that request was granted on the third day of trial (*see id.*, Ex. 2 at 1).  Also, and as the trial judge observed, petitioner wore jail sandals, rather than civilian shoes, resulting in greater visibility of the ankle chains.  (*See id.*, Ex. 13 at 52).  It further appears that one or more jurors heard petitioner say he was in custody.  (*See id.*)[3]

Considering the circumstances as a whole, there is no basis for concluding petitioner was compelled to wear visible restraints in violation of his constitutional rights.  *Cf. Estelle v. Williams*, 425 U.S. 501, 507-13 (1976) (record did not support conclusion a defendant was unconstitutionally "compelled to stand trial in jail garb" where he voluntarily chose to appear in his jail clothing); *Elmore v. Sinclair*, No. 12-99003, 2015 U.S. App. LEXIS 15966 at *19-20 (9th Cir. Sep. 3, 2015) (noting petitioner agreed to appear before the jury in jail clothing as part of a strategy to show acceptance of responsibility).  Moreover, even if construed as a constitutional violation, there is no showing of prejudice.  Petitioner admitted he broke into the victim's home and was found hiding in a closet with items the victim attested were not kept in that location.  As found by the state court, the evidence of petitioner's guilt was overwhelming.  That the jury briefly and/or inadvertently viewed petitioner's ankle restraints, in addition to his jail sandals, does not suffice to establish a substantial and injurious effect or influence in determining the jury's verdict.  Petitioner's fourth and final ground for relief should, therefore, be denied.

B.   Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

---

[3] Petitioner expanded on his explanation of discomfort as the basis for his request to remove the boot by stating he did not want to hide the fact he was in custody during the trial:  " . . . That's another lie, been in jail the whole time.  Because I'm never going to get a chance to say it.  It's something I've been wanting to tell them this for the last three days."  (Dkt. 24, Ex. 12 at 119 (statement made just after Bailiff directed jurors to exit courtroom).)

REPORT AND RECOMMENDATION
PAGE - 19

dismissal of his habeas petition only after obtaining a certificate of appealability (COA).  A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, the Court concludes petitioner is not entitled to a COA with respect to his claims.

                                    CONCLUSION

        The Court recommends the habeas petition be DENIED, and this case DISMISSED.  An evidentiary hearing is not required as the record conclusively shows that petitioner is not entitled to relief.  A proposed Order accompanies this Report and Recommendation.

                          DEADLINE FOR OBJECTIONS

        Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 16, 2015**.

        DATED this 21st day of September, 2015.


                                                _____
                                                Mary Alice Theiler
                                                United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 20